Terry Gross, terry@grossbelsky.com (SBN 103878)
Adam C. Belsky, adam@grossbelsky.com (SBN 147800)
GROSS & BELSKY P.C.
201 Spear Street, Suite 1100
San Francisco, CA 94105
Telephone: (415) 544-0200
Facsimile: (415) 544-0201

*ATTORNEYS FOR PLAINTIFF AND PROPOSED CLASS*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM WINKELSTEIN, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MARRIOTT INTERNATIONAL, INC., STARWOOD HOTELS & RESORTS WORLDWIDE, LLC <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>**JURY TRIAL DEMANDED**</u> |

Plaintiff William Winkelstein ("Plaintiff"), on behalf of himself and all others similarly situated, alleges as follows:

## <u>INTRODUCTION</u>

1.      This is a class action on behalf of all persons in California whose personal information was accessed, compromised or stolen from Marriott International, Inc. (referred to herein as "Marriott" or "Defendant," parent of Starwood Hotels & Resorts Worldwide, LLC (referred to herein as "Starwood") due to one of the worst data breaches to date in the United States ("Data Breach").

2.      During the approximately four-year period between the initial breach and its discovery, a sophisticated criminal, or criminals, took advantage of basic vulnerabilities in Marriott's computer systems to steal the personal information of an estimated 500 million individuals who had stayed at certain Marriott-affiliated hotels

during that period. Over this time, Marriott failed to detect the hackers' infiltration, make note of the massive amount of data that was being mined from its database, or take reasonable steps to investigate the numerous warnings that should have put Marriott on notice about the breach.

3.    Marriott failed to secure and safeguard its customers' personally identifiable information such as the passport information, customers' names, mailing addresses, and other personal information, as well as credit and debit card numbers and other payment card data (collectively, "Personal Information").  Marriott collected this information when its customers registered on its website, checked-in to one of its hotels, used its loyalty program (the "Loyalty Program"), and/or used it at one of its dining or retail operations within its hotels. Marriott also failed to provide timely, accurate, and adequate notice to Plaintiff and other Class Members that their Personal Information had been stolen.

4.    On November 30, 2018, Marriott reported that an investigation had determined that there was unauthorized access to the Starwood guest reservation database, which contained guest information relating to reservations at Starwood properties on or before September 10, 2018.  Marriott has not finished identifying the affected information in the database, but believes it contains information on up to approximately 500 million guests who made a reservation at a Starwood property. For over 300 million of these guests, the information includes some combination of name, mailing address, phone number, email address, passport number, Starwood Preferred Guest ("SPG") account information, date of birth, gender, arrival and departure information, reservation date, and communication preferences. For some, the information also includes credit or debit card numbers and card expiration dates.

5.    Marriott disregarded Plaintiff's and Class Members' rights by intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected, failing to take appropriate steps to stop the breach from occurring, and not informing its customers the fact that its

computer systems and security practices to safeguard customers' Personal Information were inadequate. On information and belief, Plaintiff's and Class Members' Personal Information was improperly handled and stored, was unencrypted, and was not kept in accordance with required cyber-security protocols, policies, and procedures. As a result, Plaintiff and Class Members' Personal Information was compromised and stolen. Furthermore, this Personal Information remains stored within Marriott's computer systems. Thus, Plaintiff and the Class Members have an interest in ensuring that their information is safe and secure in the future.

6.      Accordingly, Plaintiff, individually and on behalf of the Class, asserts claims against Marriott for negligence, violation of California Civil Code Section 1798.80 *et seq.*, violation of California Business and Professions Code Section 17200 *et seq*. and unjust enrichment.

7.      Plaintiff, individually and on behalf of the Class Members, seeks injunctive relief, declaratory relief, monetary and statutory damages, attorneys' fees, and all other relief as may be just and proper as provided under law or by equity.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed $5,000,000.00, exclusive of interest and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Marriott, on the other, are citizens of different states.

9.      This Court has jurisdiction over Marriott for the following reasons: Marriott is authorized to conduct business throughout the United States, including in California; it owns and operates many hotels throughout California and the United States; and it advertises in a variety of media throughout the United States, including California. Via its business operations throughout the United States, Marriott intentionally avails itself of the markets within this state to render the exercise of jurisdiction by this Court just and proper.

CLASS ACTION COMPLAINT

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1), because a substantial part of the events and omissions giving rise to this action occurred in this District.

## THE PARTIES

11.    Plaintiff William Winkelstein is an individual, who resides in this District in Mill Valley, California.

12.    Defendant Marriott is a Delaware corporation with its headquarters at 10400 Fernwood Road, Bethesda, Maryland. Marriott is a worldwide operator, franchisor, and licensor of hotel, residential, and timeshare properties under numerous brand names. Marriott operates approximately 6,520 properties worldwide, including 4,839 properties in North America alone. On September 23, 2016, Marriott completed the acquisition of Starwood Hotels & Resorts Worldwide, LLC, formerly known as Starwood Hotels & Resorts Worldwide, Inc. through a series of transactions, after which Starwood became an indirect wholly-owned subsidiary of Marriott.  Through Starwood, Marriott operates hotels and/or resorts under the Westin, Sheraton, Luxury Collection, Four Points by Sheraton, W Hotels, St. Regis, Le Meridien, Aloft, Element, Tribute Portfolio and Design Hotels brands, as well as other timeshare properties.

13.    Defendant Starwood Hotels & Resorts Worldwide, LLC, which has its principal place of business in Connecticut, is an indirect wholly-owned subsidiary of Marriott, formerly known as Starwood Hotels & Resorts Worldwide, Inc., which Marriott acquired in September of 2016.  Starwood hotels operated by Marriott include: W Hotels, St. Regis, Sheraton Hotels & Resorts, Westin Hotels & Resorts, Element Hotels, Aloft Hotels, The Luxury Collection, Tribute Portfolio, Le Méridien Hotels & Resorts, Four Points by Sheraton and Design Hotels, as well as Starwood-branded timeshare properties. According to Marriott's Form 8-K filed on November 30, 2018, the Data Breach affected the Starwood legacy customer-reservation database.

//

//

## AGENTS AND CO-CONSPIRATORS

14.    Various other individuals, partnerships, corporations, and other business entities, unknown to the Plaintiff, have participated in the violations alleged herein and have performed acts and made statements in furtherance thereof. Plaintiff reserves the right to name some or all of these persons as defendants at a later date.

15.    The acts charged in this complaint have been done by Defendants or were ordered or done by Defendants' officers, agents, employees, or representatives, while actively engaged in the management of Defendants' affairs.

16.    Whenever in this complaint reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

17.    Each Defendant or co-conspirator acted as the principal, agent, or joint venture of, or for, other Defendants and co-conspirators with respect to the acts, violations, and common course of conduct alleged by Plaintiff.

## CLASS ACTION ALLEGATIONS

18.    Plaintiff brings this action both on behalf of himself and as a class action pursuant to Federal Rules of Civil Procedure, Rule 23(a) and (b)(3), on behalf of the following class:

All persons in California whose Personal Information was accessed, compromised, or stolen from Marriott in the Data Breach.

19.    Plaintiff does not know the exact number of Class Members because such information is in the exclusive control of Defendants. Plaintiff believes that, due to the nature of the trade and commerce involved, there are likely tens of thousands of Class Members, geographically dispersed throughout the United States such that joinder of all Class Members is impracticable.

//

20.     Plaintiff's claim is typical of the claims of the class in that Plaintiff was a customer of the Defendants, all Class Members were damaged by the same wrongful conduct of Defendants and their coconspirators as alleged herein, and the relief sought is common to the class.

21.     Numerous questions of law or fact arise from Defendants' conduct that are common to the class. Among the questions of law or fact common to the class are:

a.     Whether Marriott knew or should have known that its computer systems were vulnerable to attack;

b.     Whether Marriott failed to take adequate and reasonable measures to ensure its data systems were protected;

c.     Whether Marriott failed to take available steps to prevent and stop the Data Breach from happening;

d.     Whether Marriott represented to Plaintiff and the Class Members that it would safeguard their Personal Information;

e.     Whether Marriott failed to disclose the material facts that it did not have adequate computer systems and security practices to safeguard consumers' Personal Information;

f.     Whether Marriott failed to provide timely and adequate notice of the Data Breach to Plaintiff and the Class Members;

g.     Whether Marriott owed a duty to Plaintiff and to the Class Members to protect Personal Information and to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

h.     Whether Marriott breached a duty to protect the Personal Information of Plaintiff and the Class Members by failing to provide adequate data security and by failing to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

i.     Whether Marriott's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems;

CLASS ACTION COMPLAINT

j.      Whether, as a result of Marriott's conduct, Plaintiff and the Class Members face a significant threat of harm and/or have already suffered harm, and, if so, the appropriate measure of damages to which they are entitled; and

k.      Whether, as a result of Marriott's conduct, Plaintiff and the Class Members are entitled to injunctive, equitable, declaratory and/or other relief, and, if so, the nature of such relief.

22.    These questions of law or fact are common to the class, and predominate over any other questions affecting only individual class members.

23.    Plaintiff will fairly and adequately represent the interests of the Class in that Plaintiff was a customer of the Defendants and has no conflicts with any other Class Members. Further, Plaintiff has retained competent counsel experienced in consumer class action litigation.

24.    A class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.

25.    Prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

26.    Injunctive relief is appropriate as to the Class as a whole because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole.

27.    Plaintiff reserves the right to expand, modify, or alter the Class definition in response to information learned during discovery.

## FACTS

28.    Data breaches present both immediate and ongoing risks to consumers. Hackers, or other unscrupulous individuals or organizations, can use information of the type compromised by the Data Breach—including, but not limited to, names, phone numbers, email addresses, passport numbers, dates of birth, dates of check-in and departure, and credit card numbers and expiration dates—to, among other things, (i) gain

access to individuals' electronic accounts, including social media and bank and credit card accounts, (ii) impersonate consumers in a manner detrimental to their finances or personal reputations, including by creating new accounts without authorization, and (iii) harass, blackmail or otherwise target individuals for fraud or other crimes.

29.    When a breach occurs, consumers who become victims of actual fraud are required to undertake costly and time-consuming remedial measures including, among other things, disputing and potentially prosecuting claims regarding contested charges and taking steps to repair damage to credit ratings and other reputational harm. Such consumers also face risks of civil litigation initiated by creditors based on false charges to their accounts.  Passport information is among the most dangerous for criminals to seize. Americans traveling abroad, whose passport information has been seized or otherwise misappropriated, are subject to the norms of foreign legal systems if they become the victims of identity theft.

30.    Although the United States State Department has reported that its records and systems were not connected to Marriott's and that a fake passport could not be created with a passport number alone, experts and government officials have expressed concern that the passport numbers, when used with other personal data compromised by the hack, could pose serious risks of identity theft for many years, and even be a threat to national security. United States Senator Charles E. Schumer has called upon Marriott to cover the $110.00 cost of replacing passports for consumers affected by the breach.

31.    Marriott has announced that it will only pay for new passports (new passport numbers) for customers affected by the breach if the company deems it necessary and there is evidence of fraud.  Marriott spokesperson Connie Kim stated: "We are setting up a process to work with our guests who believe that they have experienced fraud as a result of their passports being involved in this incident." Kim added: "If, through the process, we determine that fraud has taken place, then the company will reimburse guests for the costs associated with getting a new passport."

//

32.     Even when their personal information is not used upon initially being compromised, consumers remain subject to ongoing risks, requiring them to take remedial steps as identity thieves can potentially use their Personal Information for nefarious purposes months, years or decades later.  These remedial steps, which include, among other things, potentially cancelling accounts, monitoring activity on such accounts, and otherwise remaining vigilant for years or even decades to ascertain whether their information is being used to their detriment, are costly, time-consuming, and emotionally harmful to consumers.  This is even more true for consumers who travel abroad.

33.     United States Senator Edward Markey has stated: "Checking into a hotel should not mean checking out of privacy and security protections."  He added: "Preventing massive data breaches isn't just about protecting privacy, it's also about protecting our pocketbooks.  Breaches like this can lead to identity theft and crippling financial fraud.  They are a black cloud hanging over the United States' bright economic future."

34.     Upon information and belief, Marriott maintains electronic databases, including the Starwood database, in which it stores Personal Information provided by guests who stay at Marriott properties. Guests disclose this information to Marriott when making reservations at Marriott-controlled hotels. Guests who disclose this information reasonably expect that Marriott will hold it in confidence and protect it from being compromised.

35.     At the time of the Data Breach, Marriott was aware of the likelihood and repercussions of cybersecurity threats. Starwood Hotels, Inc., which Marriott acquired in 2016 and whose system Marriott has identified as having been breached, announced in November of 2015 that databases at 54 of its hotels had been hacked, placing the post-acquisition Marriott on notice of significant security risks at Starwood. The breach was announced in the very same week that Marriott announced its plan to acquire Starwood for $12.2 billion.  Despite this red flag, Marriott did not adequately address the problem.

36.    *Forbes* reported that Andrei Barysevich, a researcher with the threat intelligence company Recorded Future stated: "With all the resources they (Marriott) have, they should have been able to isolate hackers back in 2015." Furthermore, *Forbes* reported that in 2014, the Starwood website was home to an SQL injection bug and offers to hack it were being made on the dark web. According to *Forbes*, John M. Simpson, project director for privacy and technology at Consumer Watchdog stated: "Currently many companies opt for inadequate data security because it's cheaper than the consequence of a data breach."

37.    According to Marriott's November 30, 2018 Form 8-K, "[o]n September 8, 2018, Marriott received an alert from an internal security tool regarding an attempt to access the Starwood guest reservation database in the United States." In the 8-K, Marriott claims that it "quickly engaged leading security experts to help determine what occurred" and that it "learned during the investigation that there had been unauthorized access to the Starwood network since 2014."

38.    According to the 8-K, the Company discovered that "an unauthorized party had copied and encrypted information, and took steps towards removing it." On November 19, 2018, again according to the 8-K, Marriott was able to decrypt the information and determined that the contents were from the Starwood Database.

39.    The Company disclosed that it currently believes that the Starwood Database "contains information on up to approximately 500 million guests who made a reservation at a Starwood property" and that "[f]or approximately 327 million of these guests, the information includes some combination of name, mailing address, phone number, email address, passport number, Starwood Preferred Guest ('SPG') account information, date of birth, gender, arrival and departure information, reservation date, and communication preferences."

40.    Marriott also disclosed that "[f]or some, the information also includes payment card numbers and payment card expiration dates[.]" Marriott stated that the payment card numbers were encrypted using Advanced Encryption Standard encryption

(AES-128), which requires two components for successful decryption. It added that it had "not been able to rule out the possibility that both were taken." As to the remaining 173 million guests, Marriott disclosed that the compromised information "was limited to name and sometimes other data such as mailing address, email address, or other information." So far, Marriott has not provided consumers with an explanation of what this "other information" might be, leaving consumers unaware as to the precise extent to which their privacy has been invaded.

<strong>FTC Guidelines on Data Breaches</strong>

41.    The Federal Trade Commission (the "FTC") has published guidelines regarding best practices for businesses that possess customers' personal information. A recent FTC publication entitled Protecting Personal Information: A Guide for Businesses recommends that businesses (i) be aware of the nature of personal information stored in their files and on their computers, (ii) purge data that they do not have a legitimate business need to possess and keep data that is necessary for business purposes only for as long as necessary, (iii) employ appropriate physical and electronic security measures and employee training in order to safeguard data, (iv) implement appropriate information disposal procedures to assure that disposed-of information cannot be reconstructed, and (v) have a plan in place to deal with data breaches. The guidelines also state that companies should use of an "intrusion detection system," which must be updated on an ongoing basis to address new types of hacking, in order to detect network breaches when they occur.

42.    Under these guidelines, the FTC has brought enforcement actions against companies that fail adequately to safeguard the personal information of consumers, alleging that failure to protect consumer data from unauthorized access constitutes an unfair act or practice under Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. 28. Marriott's failure to safeguard the Personal Information of Plaintiff and the members of the Class constitutes an unfair act or practice under Section 5 of the

FTCA, as well as under the consumer protection statutes of all 50 states and certain territories.

43.    Despite being aware of its obligation to protect customers' Personal Information, Marriott failed to do so, resulting in injury to hundreds of millions of consumers.    Marriott's Conduct Caused Plaintiff and the Members of the Class to incur damages

44.    Marriott's failure adequately to protect Plaintiff and the members of the Class' Personal Information resulted in class-wide injuries and damages.

45.    As a direct and proximate result of Marriott's conduct described herein, Plaintiff and the members of the Class have been or will be required to take remedial action, including, but not limited to, freezing, closing or otherwise modifying their credit and other financial accounts, contacting their financial institutions to ascertain the impact of the Data Breach, filing or facing claims regarding contested charges, and reviewing and monitoring credit and other financial reports to detect unauthorized activity.

## COUNT ONE

## NEGLIGENCE

### (Plaintiff individually and All Class Members)

46.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

47.    Marriott had an affirmative duty to exercise reasonable care in protecting the Personal Information of its customers. Marriott owed Plaintiff and Class Members a duty of care to employ reasonable security measures to protect this information.

48.    Marriott, with reckless disregard for the safety and security of its customers' Personal Information it was entrusted with, breached the duty of care owed to Plaintiff and the Class by failing to implement reasonable security measures to protect its users' sensitive Personal Information. In failing to employ adequate security measures, Marriott departed from the reasonable standard of care and violated its duty to

protect the Personal Information of Plaintiff and all Class Members. Marriott further breached its duty of care by allowing the breach to continue undetected and unimpeded for a period of time after the hackers first gained access to Defendant's systems.

49.    The unauthorized access to the Personal Information of Plaintiff and all Class Members was reasonably foreseeable to Marriott.

50.    Neither Plaintiff nor other Class Members contributed to the security breach or Marriott's employment of insufficient and below-industry security measures to safeguard Personal Information.

51.    It was foreseeable that Marriott's failure to exercise reasonable care in protecting Personal Information of its customers would result in Plaintiff and the other Class Members suffering damages related to the loss of their Personal Information.

52.    As a direct and proximate result of Marriott's reckless conduct, Plaintiff and Class Members were damaged. Plaintiff and Class Members suffered injury through the public disclosure of their Personal Information, the unauthorized access obtained to accounts containing additional Personal Information, and through the heightened risk of unauthorized persons stealing additional Personal Information and of engaging in identity theft in various forms. Plaintiff and Class Members have also incurred the cost of taking measures to identify and safeguard accounts put at risk by disclosure of the Personal Information stolen from Marriott.

## COUNT TWO

## VIOLATION OF CALIFORNIA CIVIL CODE § 1798.80 *ET SEQ.*

### (Plaintiff individually and All Class Members)

53.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

54. California Civil Code § 1798.80 *et seq.* (the "Customer Records Act") requires any person conducting business in California and owning computerized data to disclose data breaches to affected users if the breach exposed unencrypted personal information.

55. The Customer Records Act also requires that the notice be made in the most expedient time possible without any unreasonable delay.

56. Marriott failed to notify users of the Data Breach in an expedient fashion.

57. The Data Breach qualifies as a "breach of security system" of Marriott within the meaning of Civil Code § 1798.82(g).

58. Marriott is liable to Plaintiff and the Class Members for $500.00 pursuant to Civil Code § 1798.84(c), or up to $3,000.00 per class member if Marriott's actions are deemed willful, intentional, and/or reckless.

59. Marriott is also liable for Plaintiff's reasonable attorneys' fees and costs pursuant to Civil Code § 1798.84(g).

## COUNT THREE

## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 *ET SEQ.*

### (Plaintiff individually and All Class Members)

60. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

61. California's Unfair Competition Law ("UCL") is designed to protect consumers from illegal, fraudulent, and unfair business practices.

62. Marriott's practice of representing that it adequately protected customers' financial and Personal Information, while Marriott, in fact, employed insufficient and ineffective security measures in order to cut costs, is a deceptive business practice within the meaning of the UCL. In fact, Marriott continued to employ insufficient security measures as to the non-public, financial and Personal Information of customers up until the date of the disclosure of the Data Breach. Thus, Marriott continues to engage in deceptive business practices.

63. Marriott's practice of withholding information about the Data Breach from its customers is also a deceptive business practice within the meaning of the UCL,

because customers reasonably expect to be notified if their non-public, financial and Personal Information is compromised.

64.     Marriott's practices are unfair because they allowed Marriott to profit while simultaneously exposing Marriott customers such as Plaintiff, to harm in the form of an increased risk of having their Personal Information stolen, which in fact occurred. Such harm was not foreseeable to Marriott's customers, who expected Marriott to employ adequate security measures to prevent a hack and investigative tools to timely discover one, and to promptly disclose any data breach.

65.     Marriott's deceptive business practices induced Plaintiff and the Class to use Marriott's services and provide Personal Information to Marriott.

66.     As a direct result of Marriott's deceptive business practices, Plaintiff and the Class have been and are being damaged.

**COUNT FOUR**

**UNJUST ENRICHMENT**

**(Plaintiff individually and All Class Members)**

67.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

68.     As a result of Marriott's misleading representations and omissions concerning the adequacy of its data security practices, Plaintiff and Class Members were induced to provide Marriott with their non-public, financial and personal information.

69.     Marriott derived substantial revenues due to Plaintiff and the Class Members using Marriott's services, which maintained their non-public, financial and Personal Information, including through the sale of advertising directed at Plaintiff and the Class Members.

70.     In addition, Marriott saved on the substantial cost of providing adequate data security to Plaintiff and the Class. Marriott's cost savings came at the direct expense of the privacy and confidentiality of the non-public, financial and personal information belonging to Plaintiff and the Class Members.

71.   Plaintiff and the Class have been damaged and continue to be damaged by Marriott's actions, and Marriott has been unjustly enriched thereby.

72.   Plaintiff and the Class are therefore entitled to damages as a result of Marriott's unjust enrichment, including the disgorgement of all revenue received and costs saved by Marriott as a result of the Data Breach.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class of California citizens, respectfully requests that the Court:

A.    Determine that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3);

B.    Direct that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the Class;

C.    Appoint Plaintiff as Class Representative;

D.    Appoint Plaintiff's counsel as Class Counsel;

E.    Enter judgment against Defendant and in favor of Plaintiff and the Class;

F.    Adjudge and decree that the acts alleged herein by Plaintiff and the Class against Defendant constitute negligence, violation of California Civil Code § 1798.80 *et seq.*, violation of California's Unfair Competition Law, and unjust enrichment;

G.    Award all compensatory and statutory damages to Plaintiff and the Class in an amount to be determined at trial;

H.    Award restitution, including the disgorgement of all revenue received and costs saved by Marriott as a result of the Data Breach, payable to Plaintiff and the Class;

I.    Award punitive damages, including treble and/or exemplary damages, in an appropriate amount;

J.    Enter an injunction permanently barring continuation of the conduct complained of herein, and mandating that Defendant and any successors in interest, be required to adopt and implement appropriate systems, controls, policies and procedures

to protect the non-public, financial and Personal Information of Plaintiff and the Class;

    K.     Award Plaintiff and the Class the costs incurred in this action together with reasonable attorneys' fees and expenses, including any necessary expert fees as well as pre-judgment and post-judgment interest; and

    L.     Grant such other and further relief as is necessary to correct for the effects of Defendant's unlawful conduct and as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this complaint that are so triable.

Dated: January 31, 2019         GROSS & BELSKY P.C.

         By: _/s/ Terry Gross_     .
           TERRY GROSS

         Terry Gross (SBN 103878)
         Adam C. Belsky (SBN 147800)
         GROSS & BELSKY P.C.
         201 Spear Street, Suite 1100
         San Francisco, CA 94105
         Telephone: (415) 544-0200
         Facsimile: (415) 544-0201